**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

LAWRENCE STIDHAM,                          :

                              Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                              Defendant.        :

Case No. 3:10-cv-351

District Judge Timothy Black
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on June 29, 2004, alleging disability since September 1, 2001[1], due to congestive heart failure. *See* Tr. 40, 281. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 40-48. A hearing was held before Administrative Law Judge Thaddeus J. Armstead, Sr. (Tr. 273-300), who determined that Plaintiff was not disabled. (Tr. 15-26). The Appeals Council denied Plaintiff's request for review, (Tr. 3-5), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that he met the insured status requirements of the Act through June 30, 2006. (Tr. 17, § 1). Judge Armstead also found that as of March 4, 2004, Plaintiff has had severe congestive heart failure with atrial fibrillation treated properly, lower extremity edema, worse on the left, morbid obesity, early lumbar spine arthritis, and restrictive lung disease. *Id.*, § 3. Judge Armstead further found that the record contains no evidence of treatment or diagnosis of any medical condition prior to March 5, 2004, and therefore it could not be found that Plaintiff suffered from any medically-determinable impairment which was severe within the meaning of the Social Security Act, prior to March 5, 2004. *Id.* Judge Armstead next found that Plaintiff does not have an impairment or combination of impairments that meets or equals the Listings. Tr. 19, § 4. Judge Armstead found further that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.*, § 5. Judge Armstead then used section 202.11 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and found that prior to June 1, 2006, when Plaintiff attained age fifty-five, there was

---

[1] On July 31, 2007, Plaintiff amended his onset date to March 5, 2004. (Tr. 93-94).

4

a significant number of jobs in the economy that Plaintiff was capable of performing. (Tr. 24, § 10). Judge Armstead then used section 202.02 of the Grid and found that as of June 1, 2006, when Plaintiff reached his fifty-fifth birthday, he has been disabled. (Tr. 25). Judge Armstead concluded that Plaintiff was disabled beginning June 1, 2006, but not before. *Id.*

Plaintiff sought emergency room treatment on March 5, 2004, for shortness of breath which he had experienced for the past six months and which had been worse in the past three days. (Tr. 95-106). At that time, it was noted that Plaintiff reported no history of previous cardiac disease, hypertension, or diabetes and that he had not seen a physician for the last several years. *Id.* It was also noted that Plaintiff had smoked one and one-half packs of cigarettes each day for the past thirty years, he slept almost sitting up, his walking distance was limited, he used his neighbor's diuretic medication, and that he had been chronically short of breath but had not sought any medical help. *Id.* It was noted further that Plaintiff was in atrial fibrillation with a rapid ventricular response of over one hundred-fifty beats per minute. *Id.* Plaintiff was hospitalized for treatment of acute and chronic congestive heart failure, atrial fibrillation, and a history of chronic obstructive pulmonary disease. *Id.* During that admission, a chest x-ray showed cardiomegaly with congestive heart failure and an echocardiogram showed left ventricular dysfunction with left ventricular ejection fraction of twenty percent to thirty percent. *Id.* Plaintiff was treated with medications, and was released on March 9, 2004. *Id.*

A home health care skilled nurse treated Plaintiff from March 11, 2004 to April 28, 2004, and it was noted over time that Plaintiff had +4 edema bilaterally in his lower extremities and pitting edema bilaterally in his posterior thighs, he had diminished breath sounds, and that Plaintiff reported he tired easily. (Tr. 107-64). On March 25, 2004, the nurse observed that Plaintiff had two

5

small areas on posterior left lower leg that were draining clear fluid and were not well defined and on March 29, 2004, Plaintiff's edema was +2. *Id.* On April 28, 2004, the nurse noted that Plaintiff's edema was 3+ and that he had open areas on his left posterior lower leg that were draining clear fluid. *Id.*

The record contains treatment notes from internist Dr. Inaparthy at the Miami Valley Hospital Clinic, dated March 5, 2004, to July 15, 2005. (Tr. 192-249). Those office notes generally reveal that Dr. Inaparthy documented that Plaintiff had 3+ and 4+ pitting edema, bilateral basal crackles, irregular heart beat, shortness of breath, stasis dermatitis, lower leg ulceration leaking clear fluid, and weight above 300 pounds. *Id.* Dr. Inaparthy also documented that Plaintiff continued to smoke against medical advice and had been advised to lose weight. *Id.* A May 5, 2004, chest x-rays revealed cardiomegaly with a small left pleural effusion suspected. *Id.* In April, 2005, Dr. Inaparthy reported that Plaintiff's cellulitis was much better and there was no redness. *Id.*

In May, 2004, Dr. Inaparthy reported that Plaintiff had dilated cardiomyopathy with an ejection fraction of 20-30% and atrial fibrillation. (Tr. 165-69). Dr. Inaparthy also reported that Plaintiff needed increasing dosages of medications to control his symptoms, that clinical findings included +3 pitting edema, diffuse crackles in his lung bases, and chronic venous stasis changes. *Id.* Dr. Inaparthy opined that Plaintiff was able to stand/walk for one hour in an eight-hour day and uninterrupted for five minutes, sit for five hours in an eight-hour day and uninterrupted for thirty minutes, lift/carry twenty pounds occasionally and five to ten pounds frequently. *Id.* Dr. Inaparthy opined that Plaintiff was unemployable. *Id.*

The record contains an undated and unsigned medical document in which someone reported that Plaintiff's ejection fraction was 20-30%, examinations showed edema/volume

6

overload, exertional dyspnea, and orthopnea, and that Plaintiff's New York Heart Association function class was II to III because it varied. (Tr. 245-49). It is also reported in the document that Plaintiff was receiving optimal benefit from his treatment, the intensity and persistence of his symptoms were customarily seen with the degree of Plaintiff's clinical findings, and that Plaintiff had skin ulcerations that were due to "probably a combination of congestive heart failure and venous insufficiency." *Id.* Whoever completed the document opined that Plaintiff was able to stand for ten minutes and walk for five minutes, that his symptoms were consistent with the degree of physical findings, he had 3+ pitting edema, was treated with medications with dosage adjustments, and that he had a restricted ability to sit, walk, stand, bend, and stoop because of his morbid obesity, stasis dermatitis with chronic leg ulcers and chronic pain from the ulcers and shortness of breath from the congestive heart failure. *Id.*

Plaintiff underwent pulmonary function studies on August 23, 2004, which showed mild restrictive lung disease without obstructive component. (Tr. 170-76).

Examining physician Dr. Danopulos reported on September 1, 2004, that Plaintiff's blood pressure was 120/70, he had atrial fibrillation, was obese weighing 312 pounds, and that he smoked one package of cigarettes each day. (Tr. 177-86). Dr. Danopulos also reported that Plaintiff had normal heart tones with no thrills, gallops, or clicks, and that he had a normal gait and got on and off the examining table without difficulty. *Id.* Dr. Danopulos noted that both of Plaintiff's legs were swollen and showed 2+ bilateral lower leg edema with stasis dermatitis in the lower left leg, he had no superficial varicose veins, brawny edema, or ulcerations, he had full motion in the all extremities and cervical spine, and that his dorsolumbar motion was reduced. *Id.* Dr. Danopulos noted further that Plaintiff's strength in his extremities was normal, there was no atrophy,

7

bilateral straight leg raising was normal, and that Plaintiff had no sensory or reflex deficits. *Id.* Dr. Danopulos noted further that Plaintiff's chest PA dimensions were increased and excursions were diminished, but expiration was not prolonged. *Id.* Lumbar spine x-rays performed in conjunction with Dr. Danopulos' examination revealed multi-level degenerative disc disease. *Id.* Dr. Danopulos opined Plaintiff was maximally restricted in lifting, carrying and walking because of his congestive heart failure which was triggered from his atrial fibrillation, morbid obesity, and restrictive lung disease. *Id.*

The record contains treatment notes from the Miami Valley Hospital Clinic dated July 15, 2005, through October 11, 2006. (Tr. 250-72). The records reveal Plaintiff demonstrated shortness of breath, bilateral crackles, diffuse varicose veins, decreased mobility, right knee crepitus, leg abrasion, and edema of his lower extremities. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by specifically rejecting the opinion of examining physician Dr. Danopulos as to Plaintiff's residual functional capacity and the opinion of Plaintiff's treating physician, Dr. Inaparthy. (Doc. 8). In addition, Plaintiff argues that the Commissioner failed to find that his impairments equaled either Listing 4.02 or Listing 4.11. *Id.*

Judge Armstead declined to give significant weight to Dr. Inaparthy's opinions on the basis that they were rendered shortly after Plaintiff's first episode of acute congestive heart failure. (Tr. 23). Judge Armstead noted that the opinions may appear to be reasonable at that time, but subsequent treatment notes document that Plaintiff's condition improved with regular and appropriate treatment and that he reported few new complaints. *Id.*

As noted above, Dr. Inaparthy essentially opined in May, 2004, that Plaintiff was able

to stand and walk for two hours in an eight-hour workday and sit for four hours in an eight-hour workday, and lift up to pounds occasionally. However, as Judge Armstead noted, after May, 2004, Dr. Inaparthy offered no further opinions as to Plaintiff's functional capacity. In addition, a review of Dr. Inaparthy's office notes reveals that, with treatment, Plaintiff's conditions improved over time. *See,* Tr. 194-249. For example, on May 12, 2004, Dr. Inaparthy reported that Plaintiff had improved, on May 28, 2004, it was noted that Plaintiff denied chest pain or shortness of breath, he was in regular sinus rhythm, and his lungs were clear. *Id.* Further, in September, 2004, Plaintiff reported he was "feeling much better", in April, 2005, Plaintiff complained only of sexual impotence, and in May, 2005, Plaintiff was "asymptomatic". *Id*.

Under these facts, this Court agrees that while Dr. Inaparthy's opinion may have been accurate for a short period of time, it was not an accurate assessment of record of Plaintiff's ongoing functional capacity. Stated differently, Dr. Inaparthy's May, 2004, opinion is not supported by his subsequent clinical findings. Accordingly, the Commissioner had an adequate basis for rejecting Dr. Inaparthy's May, 2004, opinion.

With respect to Dr. Danopulos, Judge Armstead gave significant weight to Dr. Danopulos' narrative evaluation, but found that Dr. Danopulos' September, 2004, final opinion contradicted his narrative findings (Tr. 22-23). This Court agrees. Although Dr. Danopulos ultimately opined that Plaintiff was "maximally restricted" in his abilities to perform work-related activities, his reported clinical findings do not support that conclusion. For example, Dr. Danopulos reported that Plaintiff had normal heart tones with no thrills, gallops, or clicks, and that although he had 2+ leg edema, he had no varicose veins. brawny edema, or ulcerations, and that he had a normal neurological examination. Finally, the Court notes that, as did Dr. Inaparthy, Dr. Danopulos offered

9

his opinion shortly after Plaintiff's episode of acute congestive failure and that Plaintiff's treatment notes reveal that over time, he gradually improved. Accordingly, the Commissioner had an adequate basis for rejecting Dr. Danopulos' opinion.

Plaintiff alleges next that the Commissioner erred by failing to find that he satisfied Listing 4.02A(2) or Listing 4.11B. Plaintiff's position is that he met the Listing for chronic heart failure (4.02) or chronic venous insufficiency (4.11) based on an ejection fraction reading from March 2004, examination findings showing brawny edema and in combination with his obesity.

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

Plaintiff fails to appreciate that Listing 4.02 contains specific requirements that, as Judge Armstead explained. (Tr. 19). Listing 4.02 requires a showing of systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30% or less during a period of stability (not during an episode of acute heart failure), which results in persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom [a medical consultant],

preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02.

Plaintiff's argument that his 2004 ejection fraction reading satisfies the requirement of Listing 4.02.A.1 overlooks that the record contains no other objective testing showing ongoing reduced ejection fraction. Plaintiff makes no effort to contradict Judge Armstead's finding that the "record does not document persistent symptoms of heart failure, does not document three or more separate episodes of acute failure within a consecutive 12 month period, and does not document the inability to perform an exercise tolerance test at a workload of 5METs or less." (Tr. 19). Accordingly, while Plaintiff may have satisfied some of the criteria for Listing 4.02, he did not present evidence showing that he met or equaled the Listing, and he cannot show that Judge Armstead erred in his step three analysis. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) (plaintiff cannot establish that his impairment medically equaled the Listing merely by claiming that he "almost" satisfied the Listing requirements).

Listing 4.11 addressed the impairment of chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and requires the presence of "[s]uperficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." 20 C.F.R., Pt. 404, Subpt. P, App. 1. § 4.11B.

Although it is documented in the record at times that Plaintiff had stasis dermatitis and superficial varicosities, *see, e.g.,* Tr. 195, 214, 233, 272, there is no documentation in the record that Plaintiff had either recurrent ulceration or persistent ulceration that had not healed following

11

at least three months of treatment. While the record does reveal that Plaintiff had ulcerations in May, 2004; June 29, 2005; and July 20, 2005, (Tr. 225, 195, 272), no other examinations demonstrated ulcerations.

Plaintiff suggests that he satisfied the Listings when his obesity is considered. However, the record reveals that Judge Armstead considered Plaintiff's morbid obesity and, indeed, found that it is a severe impairment. (Tr. 17, § 3). In addition, the reviewing physicians considered Plaintiff's morbid obesity in determining that Plaintiff did not satisfy the Listings. (Tr. 187-91).

Under these facts, the Commissioner did not err by failing to find that Plaintiff satisfied the Listings.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

April 14, 2011.

                  *s/ Michael R. Merz*
                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).